RESOLUTION TRUST CORPORATION, as Receiver for Peoples Heritage Savings, Peoples Heritage Federal Savings & Loan Association of Salina, Kansas, and Sandia Federal Savings & Loan of Albuquerque, New Mexico, Plaintiffs,

v.

James R. CRUCE, Thomas A. Burger, Thomas D. Dunn, Jr., Catherine Elizabeth Allin–Cruce, Dorothy M. Cruce, Rebecca M. McCloskey (formerly Rebecca M. Cruce), Lou Ann Dunn, individually and as Trustee of the Thomas D. Dunn, Jr. Trust No. 1, Robert A. Stinson, as Trustee of the Shana Marie Dunn Trust and as Trustee of the Thomas Arthur Dunn Trust, Mary Colette Burger, Walid Qaddoumi, Peoples Federal Bancshares, Inc., and Commerce Bank of Kansas City, N.A., Defendants.

Civ. A. No. 91–4295–S.

United States District Court,
D. Kansas.

Jan. 30, 1992.

Cathy J. Dean, Polsinelli, White, Vardeman & Shalton, Overland Park, Kan., Timothy J. Sear, Polsinelli, White, Vardeman &

Shalton, Kansas City, Mo., David Mullin, Brad A. Chapman, Mullin, Hoard & Brown, Amarillo, Tex., for plaintiffs.

Bruce C. Houdek, James, Millert, Houdek, Tyrl & Sommers, Kansas City, Mo., Terence J. Thum, J. Randall Coffey, Bryan, Cave, McPheeters & McRoberts, Kansas City, Mo., James L. Eisenbrandt, Bryan, Cave, McPheeters & McRoberts, Leawood, Kan., for James R. Cruce, Thomas A. Burger and Thomas D. Dunn, Jr.

Thomas M. Bradshaw, Daniel O. Herrington, Hoskins, King, McGannon & Hahn, Kansas City, Mo., for Catherine Elizabeth Allin–Cruce.

David D. Moshier, Hampton, Royce, Engleman & Nelson, Salina, Kan., Norman R. Mueller, Haddon, Morgan & Foreman, P.C., Denver, Colo., for Rebecca M. McCloskey.

R. Stan Mortenson, David R. Fontaine, Miller, Cassidy, Larroca & Lewis, Washington, D.C., for Lou Ann Dunn.

J. Stan Sexton, Hampton, Royce, Engleman & Nelson, Salina, Kan., for Robert L. Stinson.

William R. Vincent, Law Offices of William R. Vincent, P.A., Topeka, Kan., for Mary Colette Burger, Walid Qaddoumi, Peoples Federal Bancshares, Inc. and Commerce Bank of Kansas City, N.A.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the Resolution Trust Corporation's ("RTC") motion for a preliminary injunction freezing the assets of all of the named defendants and for appointment of a trustee to manage the assets.

This case has its origin in the failure of Peoples Heritage Savings, a Federal Savings and Loan Association, Salina, Kansas, and, before that, Peoples Heritage Federal Savings and Loan Association of Salina, Kansas (collectively "Peoples"), and the eventual criminal convictions of James R. Cruce ("Cruce"), Thomas A. Burger ("Burger"), and Thomas D. Dunn, Jr. ("Dunn") for criminal misconduct related to the savings and loan failure. In its complaint, the RTC seeks to collect on the restitution owed by Cruce, Burger, and Dunn to the RTC as receiver of Peoples. It also seeks a judgment against the three named principals for additional losses under the theories of fraud and breach of fiduciary duties. In addition, the RTC is seeking restitution from all defendants to the extent they have been unjustly enriched by the fruits of Burger's, Dunn's, and Cruce's fraud. Finally, the RTC is seeking to set aside certain conveyances to the named defendants as fraudulent transfers of assets by Burger, Cruce, and Dunn. In the interim, the RTC has requested the preliminary injunction freezing the assets of the defendants and appointment of a trustee to manage the assets pending the outcome of the litigation.

A hearing was held on January 23 and 24, 1992, and the court took the motion under advisement. At the hearing, the court was advised the RTC had reached agreements regarding the injunction with defendants Catherine Elizabeth Allin–Cruce, Dorothy M. Cruce, Rebecca M. McCloskey, Robert A. Stinson, Mary Colette Burger, and Walid Qaddoumi. Two defendants, Thomas A. Burger and Peoples Federal Bancshares, Inc., did not appear at the hearing. The court was further advised that a stipulation would be submitted to the court for dismissal of Commerce Bank of Kansas City, N.A., so no appearance was entered for that defendant. The court, after consideration of the parties' arguments, evidence, and pleadings, will now address the RTC's motion for a preliminary injunction as to the remaining defendants, James R. Cruce, Thomas A. Burger, Thomas D. Dunn, Jr., Lou Ann Dunn, and Peoples Federal Bancshares, Inc.

■ The granting of a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure is within the sound discretion of this court. The standards which govern the granting of a preliminary injunction are well settled in this circuit. The moving party must establish: (1) a showing that the movant will suffer irreparable injury unless the injunction issues; (2) a showing that the injunction, if

issued, would not be adverse to the public interest; (3) proof that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing parties; and (4) substantial likelihood that the movant will eventually prevail on the merits. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980).

A preliminary injunction maintains the status quo until a judgment can be rendered on the merits of the case. *Tri–State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir.1986). "In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." *Id.*

On November 29, 1990, Congress enacted the "Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990." This amended and broadened the authority of the RTC and the Federal Deposit Insurance Corporation to address unlawful activities affecting financial institutions. 136 Cong.Rec. E3684–02 (daily ed. November 2, 1990) (statement of Rep. Schumer). Courts have been given the authority to grant the type of asset freeze requested by the RTC in this case. *See* 12 U.S.C. § 1821(d)(18), (19). The statute states in part:

**(18) Attachment of assets and other injunctive relief**

Subject of [sic] paragraph (19), any court of competent jurisdiction may, at the request of—

(A) the Corporation (in the Corporation's capacity as conservator or receiver for any insured depository institution or in the Corporation's corporate capacity with respect to any asset acquired or liability assumed by the Corporation under section 1821, 1822, or 1823 of this title); or

. . . . .

issue an order in accordance with Rule 65 of the Federal Rules of Civil Procedure, including an order placing the assets of any person designated by the Corporation or such conservator under the control of the court and appointing a trustee to hold such assets.

The statute further provides:

**(19) Standards**

**(A) Showing**

Rule 65 of the Federal Rules of Civil Procedure shall apply with respect to any proceeding under paragraph (18) without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate.

Although the RTC does not have to show irreparable or immediate harm, Congressman Schumer cautioned:

"Congress still intends that the Corporation be required to make some showing of injury prior to obtaining relief. Congress is granting such relief from the more rigorous requirements of Rule 65 because the Federal Deposit Insurance Corporation and the Resolution Trust Corporation are in the position of protecting the depository insurance fund, i.e., the taxpayers' money." 136 Cong.Rec. E3684–02 (daily ed. November 2, 1990) (statement of Rep. Schumer).

### IRREPARABLE INJURY

While the court may statutorily presume the RTC will suffer irreparable injury unless it is granted a preliminary injunction, the court finds the RTC has established this element with its evidence. In its complaint, the RTC pled damages in excess of $148 million. This not only includes the court ordered restitution, which remains unsatisfied to this day, but also includes damages allegedly suffered by the taxpayers as a result of Cruce's, Burger's, and Dunn's involvement in the criminal activities to which they pled guilty and were sentenced. The crimes to which the three pled guilty were crimes of dishonesty and deceit. In the face of a lawsuit of this magnitude, there is the potential for the RTC's remedy, if it prevails, to be rendered meaningless by a dissipation of the assets from which a judgment could be satisfied. The Tenth Circuit has ruled that "[d]ifficulty in collecting a damage judgment may support a claim of irreparable injury."

*Tri–State Generation and Transmission Ass'n, Inc.*, 805 F.2d at 355. Congress recognized this very concern by providing the RTC with a pretrial remedy of obtaining an asset freeze. The court is satisfied that the RTC would suffer irreparable harm without this proposed injunction.

### PUBLIC INTEREST

The defendants do not seriously contest this element. Because Congress has increased the RTC's authority and power to respond to growing public outcry regarding the losses suffered by failed financial institutions, granting an injunction provided for by Congress cannot be said to be against the public interest. The court finds it is not adverse to the interest of the public to grant the requested asset freeze in this case.

### BALANCING THE INJURIES

The court recognizes the seriousness of placing an individual's assets under the control of a trustee and has carefully considered the equities of this action. The court finds the harm to the RTC of potentially not being able to satisfy its judgment if it prevails on the merits, outweighs the temporary inconvenience of having a trustee manage the defendants' assets. The assets will not be dissipated during the litigation and will be available to the defendants at the conclusion of the action should the defendants prevail. *See* 805 F.2d at 357.

### SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

By necessity, the court must make some examination of the substantive law in order to determine whether the RTC has met its burden with respect to showing a substantial likelihood of success on the merits. The law, however, is virtually untested because of the recent enactment of the statutory provisions involved in this case. It would be unfair to both parties at this

stage of the litigation to make binding decisions regarding the application of the law without providing each side a more complete opportunity to brief the pertinent issues. The court contemplates such an opportunity at a later stage of the litigation. With this in mind, the court will make the following findings.

Both Thomas and Lou Ann Dunn make numerous arguments regarding the showing the RTC must make on this element. If the movant meets its burden of showing the three elements previously discussed, it need only show a fair ground for litigation to meet the substantial likelihood of success element. *See Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 781–82 (10th Cir.1964). This probability of success is met if the movant "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." 338 F.2d at 782. The court finds this is the standard that should be applied in this case. Although the court could have presumed the irreparable injury element, specific findings were made and it is appropriate to require the RTC to show only a fair ground for litigation. The court makes no finding as to the applicability of the standard if the first element is not analyzed by the court.

The RTC is proceeding under various theories in seeking to recover its claimed damages. The court finds the RTC has shown a fair ground for litigation on its fraudulent conveyance theory and the court need not address each and every theory to grant the injunction.[1] The fraudulent conveyance claims fully support the relief sought at this time.

The RTC, as conservator or receiver, has been given the power to avoid certain conveyances of property. The statute, 12 U.S.C. § 1821(d)(17), reads in pertinent part: ·

---

1. The Dunns have both alleged the RTC has not stated claims upon which relief can be granted for some of its theories, such as the unjust enrichment claim. The court is expressing no opinion at this time on the viability of such claims, but is merely finding it unnecessary to reach such questions.

**(A) In general**

The Corporation, as conservator or receiver for any insured depository institution ... may avoid a transfer of any interest of an institution-affiliated party, or any person who the Corporation or conservator determines is a debtor of the institution, in property, or any obligation incurred by such party or person, that was made within 5 years of the date on which the Corporation or conservator was appointed conservator or receiver if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the insured depository institution, the Corporation or other conservator, or any other appropriate Federal banking agency.

.    .    .    .    .

**(C) Rights of transferee or obligee**

The Corporation or any conservator described in subparagraph (A) may not recover under subparagraph (B) from—

(i) any transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith; or

(ii) any immediate or mediate good faith transferee of such transferee.

■ The legal question raised by the Dunns is whether Kansas law governs the standards to be applied in determining whether the transfers were made "with the intent to hinder, delay, or defraud." The only other court addressing this same issue when ruling on whether to grant a temporary restraining order stated the following: "At this stage of the proceedings, the Court need not resolve the complex legal question as to whether 12 U.S.C. § 1821(d)(17) embodies a separate federal fraudulent conveyances law, or whether it merely codifies District of Columbia law...." *Federal Deposit Ins. Corp. v. Cafritz,* 762 F.Supp. 1503, 1506 (D.D.C. 1991).

Kansas law would require the proof to be clear and convincing. *Gorham State Bank v. Sellens,* 244 Kan. 688, 772 P.2d 793, 795 (1989). Further, the Kansas Supreme Court has set forth the six badges or indicia of fraud to be considered in view of the pertinent facts of each case. These include:

(1) a relationship between the grantor and grantee; (2) the grantee's knowledge of litigation against the grantor; (3) insolvency of the grantor; (4) a belief on the grantee's part that the contract was the grantor's last asset subject to a Kansas execution; (5) inadequacy of consideration; and (6) consummation of the transaction contrary to normal business procedures. *Credit Union of America v. Myers,* 234 Kan. 773, 676 P.2d 99, 104 (1984).

For the purpose of this motion, the court finds that, even if Kansas supplies the applicable law from which to determine whether a conveyance is fraudulent, the RTC has shown a fair ground for litigation. Many of the conveyances contested by the RTC from Thomas to Lou Ann Dunn were the result of an "Asset Division Agreement" entered into by the Dunns in October 1986. This agreement purported to divide their assets, and, as a result of the agreement, Dunn conveyed his interest in numerous properties to Lou Ann. These transfers of property took place from late 1986 through 1988.

Addressing the badges of fraud under Kansas law, the Dunns' relationship as husband and wife conveys the status of an insider to Lou Ann Dunn. Thus, the first indicia of fraud is present. The evidence introduced by Dunn includes an affidavit stating he was not insolvent at the time of the conveyances in question. On the other hand, the testimony of Harry Potter, a certified public accountant who does fraud investigations and was employed by the RTC for that purpose in this case, indicates Dunn was insolvent at least at the time the asset agreement was signed. This is credible evidence of another of the indicia of fraud.

Further, the evidence supports a conclusion that the property conveyed to Lou Ann Dunn was transferred without consideration for the most part, and certainly contrary to normal business procedures. The agreement provided that Dunn kept only his 50 percent stock ownership in Peoples

Federal Bancshares Inc. stock that Potter identified as worthless, at that time, to an arms-length buyer, and his ownership of Tom Dunn Oil. At the time of the agreement, Lou Ann did not own an interest in either of those properties. Lou Ann, on the other hand, kept property that was solely hers, and in addition received all property in which Dunn had an interest and two properties which previously had been only in Dunn's name.

While there was testimony that Dunn believed his stock to be worth $20 million, the agreement was drawn at a time subsequent to his involvement in criminal activities with reference to Peoples, and at a time when an expert witness has testified he was insolvent. Many of the transferred properties went to Lou Ann and then were subsequently transferred to several trusts.[2] From the evidence introduced, the court finds that enough indices of fraud exist, even under Kansas law, to present fair grounds for litigation. Accordingly, the court will grant the preliminary injunction as to the assets of Thomas and Lou Ann Dunn. The court has previously ordered the parties to brief the issue of specific property which should be subject to this injunction, and the court will follow up with an order addressing specific property after reviewing the parties' briefs.

As to the Thomas A. Burger and Peoples Federal Bancshares, no appearances were entered, the RTC's evidence was not refuted, and, accordingly, the court will grant the RTC's requested injunction freezing their assets.

Regarding James R. Cruce, the court finds the RTC has made a showing of fair grounds for litigation, no evidence having been introduced to refute the RTC's evidence. Accordingly, the court will grant the RTC's requested injunction freezing his assets.

IT IS BY THE COURT THEREFORE ORDERED that the RTC's motion for a preliminary injunction freezing the assets

of James R. Cruce, Thomas A. Burger, Thomas D. Dunn, Jr., Lou Ann Dunn, and Peoples Federal Bancshares, Inc. (Doc. 2) is granted.

IT IS FURTHER ORDERED that the court appoints the Honorable J. Milton Sullivant, 1000 Parkview Road, Lawrence, Kansas, as trustee for the assets subject to this injunction.

IT IS FURTHER ORDERED that the RTC submit to the court by 5 p.m. Monday, February 3, 1992, all pleadings necessary for the appointment and qualification of the Honorable J. Milton Sullivant as trustee in this matter and any further pleadings necessary for him to carry out his duties as trustee during the pendency of this litigation.

IT IS FURTHER ORDERED that until the court issues a more specific order regarding the exact property which is subject to the injunction, each of the defendants previously named, their agents, representatives, servants, employees, and all persons acting in concert or participation with them or under their authority, is prohibited from directly or indirectly transferring, selling assigning, dissipating, concealing, encumbering, pledging, hypothecating, impairing, or otherwise disposing of, in any manner whatsoever, any of their property or assets, including, but not limited to, any of the alleged fraudulently obtained proceeds and properties, any assets acquired with the alleged fraudulently obtained proceeds and properties, and any profits earned on the alleged fraudulently obtained proceeds and properties, whether in defendants' possession or not.

---

2. The conveyances to the Shana Marie Dunn Trust and the Thomas Arthur Dunn Trust, Robert A. Stinson, trustee, will not be addressed in this order. The trustee and the RTC have reportedly reached an agreement regarding the injunction, which the court will reference in a later order.