972 F.2d 1195
 RESOLUTION TRUST CORPORATION, as Receiver for Peoples
Heritage Savings, and Peoples Heritage Federal Savings and
Loan Association of Salina, Kansas, and Sandia Federal
Savings and Loan of Albuquerque, New Mexico, Plaintiff-Appellee,
v.
James R. CRUCE; Thomas A. Burger; Thomas D. Dunn, Jr.;
Catherine Elizabeth Allin-Cruce; Dorothy M. Cruce; Rebecca
M. McCloskey, formerly known as Rebecca M. Cruce; Robert L.
Stinson, as Trustee of the Shana Marie Dunn Trust and as
Trustee of the Thomas Arthur Dunn Trust; Mary Colette
Burger; Walid Qaddoumi; Peoples Federal Bancshares Inc., Defendants,
and
Lou Ann Dunn, Individually and as Trustee of the Thomas D.
Dunn, Jr. Trust No. 1, Defendant-Appellant.
Honorable J. Milton Sullivant, Trustee.
 No. 92-3050.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 17, 1992.
 
 David R. Fontaine (R. Stan Mortenson, of Miller, Cassidy, Larroca & Lewin, Washington, D.C., and Gary D. McCallister, of Davis, Wright, Unrein, Hummer & McCallister, Topeka, Kan., were with him on the briefs), of Miller, Cassidy, Larroca & Lewin, Washington, D.C., for Defendant-Appellant.
 David Mullin (Brad A. Chapman, of Mullin, Hoard & Brown, Amarillo, Tex., and Mira N. Marshall, of counsel, Legal Div., Professional Liability Section, Resolution Trust Corp., Washington, D.C., were with him on the brief), of Mullin, Hoard & Brown, Amarillo, Tex., for plaintiff-appellee.
 Before MOORE, ENGEL,* and TACHA, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 Defendant-appellant Lou Ann Dunn appeals from two district court orders granting a preliminary injunction freezing certain of her assets and appointing a trustee to take custody and control of those assets during the pendency of this action for restitution. Resolution Trust Corp. v. Cruce, 783 F.Supp. 1309 (D.Kan.1992) (order granting preliminary injunction); Resolution Trust Corp. v. Cruce, No. 91-4295-S, 1992 WL 21396 (D.Kan. Feb. 5, 1992) (order creating trust, selecting trustee, and identifying properties subject to the freeze). Appellant contends that the preliminary injunctive orders impermissibly freeze property that cannot be reached to satisfy a final judgment and that the district court abused its discretion in granting the preliminary injunction. We exercise jurisdiction under 28 U.S.C. § 1292(a)(1) and affirm.
 
 BACKGROUND
 
 2
 This case arises from the failure of Peoples Heritage Federal Savings and Loan Association of Salina, Kansas ("Peoples Heritage") and the subsequent convictions of three of its principal directors and officers: James R. Cruce, Thomas D. Dunn, Jr., and Thomas A. Burger. Appellant Lou Ann Dunn is married to Thomas D. Dunn, Jr. On December 31, 1991, the Resolution Trust Corporation ("RTC"), as receiver for Peoples Heritage, filed suit to collect a restitution judgment from Cruce, Dunn, Burger and numerous other defendants--including appellant Lou Ann Dunn--to whom Cruce, Dunn and Burger allegedly have fraudulently conveyed assets. In a series of orders, the district court granted the RTC's motion to freeze assets of the defendants and to appoint a trustee to control the assets during the pendency of the suit.
 
 
 3
 In an order entered on February 5, 1992, the district court subjected the following assets and properties of Lou Ann Dunn to the freeze order: six real properties and their improvements located on Bluemont Avenue in Manhattan, Kansas (including an Arby's restaurant, a convenience store, a liquor store, and a gas station); real property and improvements located at 6th Street and Jackson Street in Junction City, Kansas (a Wendy's restaurant); real property and improvements located at 522 North Ohio in Salina, Kansas (a warehouse); real property and improvements located at 10009 East Mentor in Salina, Kansas (a farm property); real property and improvements located at 921 Shalimar in Salina, Kansas (an office building); real property and improvements located at 649 South Broadway in Salina, Kansas (La Hacienda Mexican Food Restaurant); shares of La Hacienda Compania, Inc., the operating entity for the restaurant; real property and improvements located at No. 8 Crestview in Salina, Kansas (current residence of Lou Ann Dunn and her children); and the Benton and Sandzen art collection located at the Dunns' residence. The district court placed these properties in a trust and empowered the trustee to collect all income generated from these properties and to use the income to pay reasonable expenditures for the management, maintenance, and preservation of the trust assets.
 
 
 4
 On October 10, 1986, Thomas Dunn, Jr. and Lou Ann Dunn entered into an Asset Division Agreement by which they allegedly divided their assets equally. Between December 22, 1986 and September 14, 1988, Thomas Dunn transferred to Lou Ann Dunn his interest in each of the properties that are subject to the freeze order. Prior to execution of the agreement, Lou Ann Dunn owned a one-half interest in some of these properties. In its original complaint, in addition to seeking restitution from Thomas Dunn, the RTC requested a full accounting from Thomas Dunn and Lou Ann Dunn for all monies Thomas Dunn received from Peoples Heritage through his fraudulent activities. The RTC also sought to set aside Thomas Dunn's fraudulent conveyance of assets and properties to Lou Ann Dunn and to trusts for his children. In seeking the freeze of Lou Ann Dunn's assets, the RTC alleged that each of the property transfers from Thomas Dunn to Lou Ann Dunn mentioned above were fraudulent under the Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990, Pub.L. No. 101-647, § 2528, 104 Stat. 4859, 4863 (codified at 12 U.S.C. § 1821(d)(17)) ("Taxpayer Recovery Act"), the Federal Debt Collection Procedures Act, Pub.L. No. 101-647, § 3611, 104 Stat. 4933, 4933-64 (codified at 28 U.S.C. §§ 3001-3308), federal common law, and Kansas state law.
 
 DISCUSSION
 
 5
 I. Legal Standard for Issuance of a Preliminary Injunction
 
 
 6
 Dunn asserts that the district court erred in granting the RTC's request for a preliminary injunction and freezing certain assets and properties. The primary function of a preliminary injunction "is to preserve the status quo pending a final determination of the rights of the parties," Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir.1980), in order "to preserve the power to render a meaningful decision on the merits," Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir.1986). When deciding whether to issue a preliminary injunction, a district court almost always faces an abbreviated set of facts and must hypothesize the probable outcome of a case and the probable harm to the parties. Therefore, we leave "[t]he issuance ... of a preliminary injunction [to] ... the sound discretion of the trial court and ... set [the injunction] aside only if it is based on an error of law or constitutes an abuse of discretion." Id. at 354.
 
 
 7
 To obtain a preliminary injunction, the moving party must establish that
 
 
 8
 (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.
 
 
 9
 Id. at 355. When a party seeking a preliminary injunction satisfies the first three requirements, the standard for meeting the fourth "probability of success" prerequisite becomes more lenient. The movant need only show "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." Id. at 358 (quoting Otero Savings & Loan Ass'n v. Federal Reserve Bank, 665 F.2d 275, 278 (10th Cir.1981)).
 
 
 10
 As part of the Taxpayer Recovery Act, 12 U.S.C. § 1821, Congress altered the showing the RTC must make to obtain preliminary injunctive relief. Congress stated that
 
 
 11
 Rule 65 of the Federal Rules of Civil Procedure shall apply with respect to any proceeding under paragraph (18)[1] without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate.
 
 
 12
 12 U.S.C. § 1821(d)(19). Instead of applying § 1821(d)(19), the district court found that the RTC adequately showed that it would suffer irreparable injury. After finding that the RTC also met the second and third prerequisites for a preliminary injunction, the district court then applied the more lenient "fair ground for litigation" standard in place of the normal "substantial likelihood of success" standard as the fourth prerequisite for preliminary injunctive relief.
 
 
 13
 On appeal, Dunn argues that the district court abused its discretion in finding that the RTC demonstrated that irreparable injury would occur absent an injunction. The RTC, on the other hand, asserts two alternate reasons to support the district court's holding. First, the RTC contends that the district court correctly found that the RTC satisfied each of the first three prerequisites for a preliminary injunction--including irreparable injury--and, therefore, properly applied the "fair ground for litigation" test. Second, the RTC contends that, based on 12 U.S.C. § 1821(d)(19), the "fair ground for litigation" standard should apply even when the RTC does not show irreparable injury. Neither our circuit nor other circuits adopting the more liberal "fair ground for litigation" standard have addressed the application of that standard in conjunction with § 1821(d)(19). Therefore, we must first address what standard the RTC must meet to be entitled to a preliminary injunction under Fed.R.Civ.P. 65.
 
 
 14
 We begin our analysis by looking to the language of the statute. The text of § 1821(d)(17)-(19) evidences Congress' clear intent to augment the RTC's ability to avoid fraudulent conveyances or to freeze assets that may have been fraudulently conveyed by parties related to insured depository institutions. The legislative history of the Taxpayer Recovery Act further buttresses our reading of the statute:
 
 
 15
 Subtitle B of the legislation, which is aimed at protecting assets from wrongful disposition, expands the authority of ... conservators, receivers or liquidating agents ... to enjoin the dissipation of assets wrongfully obtained ... [and] to void fraudulent transfers.
 
 
 16
 136 Cong.Rec. E3684-02 (daily ed. Nov. 2, 1990) (material in extension of remarks of Rep. Schumer). The legislative history provides more specific evidence of Congress' intent with regard to paragraph (19) of § 1821(d):
 
 
 17
 New paragraph (19) provides that, in an action brought in federal court, the protections of the Federal Rules of Civil Procedure apply to a person whose assets ... the Resolution Trust Corporation is seeking to attach. However, this provision waives the requirement of Rule 65 of the Federal Rules of Civil Procedure that a showing of irreparable or immediate injury is necessary prior to the Corporations' receiving a temporary restraining order. Congress still intends that the Corporation be required to make some showing of injury prior to obtaining relief. Congress is granting such relief from the more rigorous requirements of Rule 65 because the ... Resolution Trust Corporation [is] in the position of protecting the depository insurance fund, i.e., the taxpayers' money.
 
 
 18
 Id. (emphasis added).
 
 
 19
 Although Congress clearly removed the irreparable injury requirement of Rule 65, neither the statute nor its legislative history directly addresses the continued applicability of our "fair ground for litigation" standard in this context. By enacting the statute, however, Congress clearly intended to reduce the RTC's burden--vis a vis other litigants in similar situations--when it seeks to freeze assets that allegedly are the subject of a fraudulently conveyance. Given this unequivocal congressional mandate, in conjunction with the balance our circuit has struck in allowing the "fair ground for litigation" standard, we conclude that the RTC--when seeking a preliminary injunction in a suit to void a potential fraudulent conveyance--may use the "fair ground for litigation" standard even when it need not show irreparable injury pursuant to § 1821(d)(19).
 
 
 20
 We emphasize that our holding does not eliminate the RTC's burden to show potential injury when it seeks a preliminary injunction. As indicated by the legislative history of § 1812(d)(19), "Congress still intends that the Corporation be required to make some showing of injury prior to obtaining relief." 136 Cong.Rec. E3684-02 (daily ed. Nov. 2, 1990) (material in extension of remarks of Rep. Schumer) (emphasis added). Further, in addition to making "some showing of injury," the RTC must still meet the second and third prerequisites required for a preliminary injunction before it may take advantage of the "fair ground for litigation" standard. Therefore, we turn to a consideration of each of these prerequisites.
 
 
 21
 II. "Some Showing of Injury"
 
 
 22
 After reviewing the record, we conclude that the RTC has made "some showing of injury" in this case. The district court found that the RTC demonstrated irreparable injury at the preliminary injunction hearing. At the hearing, the RTC showed that Thomas Dunn has not yet paid $5,390,000 of the restitution that he owes the RTC. Indeed, the record also suggests that Thomas Dunn does not possess assets of sufficient value--even taking into account the assets he allegedly fraudulently conveyed to Lou Ann Dunn--to extinguish this liability. These facts alone support a showing of injury. See Tri-State, 805 F.2d at 355 ("[d]ifficulty in collecting a damages judgment may support a claim of irreparable injury"). Further, our conclusion that the RTC has met its burden of making "some showing of injury" coincides with Congress' reason for relaxing the irreparable injury requirement--that the RTC is "in the position of protecting the depository insurance fund, i.e., the taxpayers' money." 136 Cong.Rec. E3684-02 (daily ed. Nov. 2, 1990) (material in extension of remarks of Rep. Schumer).
 
 III. Balancing the Injuries
 
 23
 To obtain the injunction, the RTC must show that its potential injury, absent the injunction, outweighs the injury to Lou Ann Dunn if the injunction does issue. We recognize that the district court's issuance of a preliminary injunction presents some potential for injury to Lou Ann Dunn. Mrs. Dunn owned and controlled an interest in much of the property that is subject to the injunction before Thomas Dunn defrauded Peoples Heritage. The injunction temporarily removes these properties from Mrs. Dunn's control and vests control in a neutral trustee.
 
 
 24
 However, the district court has placed restrictions on the trustee's control over the properties. The trust requires that the trustee act to preserve and maintain the properties and that the trustee "manage each asset in the same manner as a reasonable, prudent owner." The trust also requires the trustee to provide and file with the court semi-annual accountings with respect to each asset. The trustee cannot sell or dispose of any major asset without first seeking permission from the district court. Further, the trust requires the trustee to make a detailed statement of reasonable compensation for services rendered and for reimbursable expenses, and the district court retains the right to review such compensation and expenses. In summary, the district court has painstakingly attempted to preserve these assets in their original status so that they may be returned to Lou Ann Dunn and the other defendants in the event the RTC does not prevail in this action.
 
 
 25
 Turning to the RTC's potential injury, we first note that the RTC protects the depository insurance fund, which in a very real sense translates to the interest of all taxpayers. As we hold below, the RTC at least has stated a fair ground for litigating the fact that Thomas Dunn fraudulently transferred to Lou Ann Dunn a portion of the interest she now holds in the subject properties. With the assets in Mrs. Dunn's unfettered control, the potential exists--and we need not decide that it is a likelihood--that the property interests transferred from Thomas Dunn to Lou Ann Dunn could be dissipated, mortgaged or transferred. Given the district court's attempt to preserve the prelitigation status of Lou Ann Dunn's assets, we conclude that Lou Ann Dunn's potential injury from issuance of the injunction is outweighed by the potential injury to the RTC--and thus to the public--if the injunction had not issued.
 
 IV. Public Interest
 
 26
 Issuance of a preliminary injunction is appropriate only if the movant shows that the injunction would not be adverse to the public interest. Because the RTC's goal in seeking a preliminary injunction is to preserve assets that potentially may provide restitution to the depository insurance fund for monies fraudulently taken by defendants Cruce, Burger, and Thomas Dunn, we cannot conclude that issuance of the injunction is adverse to the public interest.
 
 V. Likelihood of Success on the Merits
 
 27
 Because the RTC has met its prerequisite showings on the first three requirements for a preliminary injunction, we must now examine the fourth prerequisite--whether the RTC has shown "serious, substantial, difficult and doubtful" questions going to the merits. We conclude that the RTC has met this burden with respect to its claims that (1) Thomas Dunn fraudulently conveyed his interests in certain assets and properties to Lou Ann Dunn and (2) each of those assets and properties may serve to satisfy Thomas Dunn's restitution liability to the RTC. Because we apply the "fair ground for litigation standard," we emphasize that our conclusion regarding the propriety of a preliminary injunction does not suggest any particular resolution of these issues on the merits.
 
 
 28
 The RTC "may avoid a transfer of any interest of an institution-affiliated party ... if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the insured depository institution." 12 U.S.C. § 1821(d)(17) (emphasis added.) Lou Ann Dunn contends that the RTC has failed to present any evidence of actual intent to either hinder, delay, or defraud Peoples Heritage.
 
 
 29
 At the preliminary injunction hearing, the parties raised the legal issue of whether federal law or Kansas law should govern the intent standard under § 1821(d)(17). We agree that, at the preliminary injunction stage of the proceedings, the district court did not need to " 'resolve the complex legal question as to whether 12 U.S.C. § 1821(d)(17) embodies a separate federal fraudulent conveyances law, or whether it merely codifies [Kansas] law.' " Cruce, 783 F.Supp. at 1313 (quoting FDIC v. Cafritz, 762 F.Supp. 1503, 1506 (D.D.C.1991)).[2] Regardless of whether federal or Kansas law applies, we conclude that the RTC has produced enough indicia of fraud to raise serious questions as to the merits of its fraudulent conveyance claim.
 
 
 30
 The district court found that the RTC presented credible evidence that Thomas Dunn transferred the properties at issue to Lou Ann Dunn for little or no consideration. Although Lou Ann Dunn purports to have received these properties pursuant to the 1986 Asset Division Agreement, the record contains evidence that Thomas Dunn transferred most of his assets to Lou Ann Dunn. Further, he received nothing in return, and only retained ownership of his own oil company and his stock in Peoples Heritage, which was worthless according to one witness at the hearing.
 
 
 31
 The district court also concluded that Thomas Dunn was insolvent at the time he transferred the properties at issue to Lou Ann Dunn. The court based its finding on the testimony of Harry Potter, a certified public accountant who specializes in fraud investigations. Potter testified that the stock owned by Thomas Dunn in Peoples Federal Bancshares (a holding company that owned the stock of Peoples Heritage) was worthless as early as 1986 and that in 1986 Thomas Dunn was personally liable on a $5.4 million loan related to a joint venture. Lou Ann Dunn characterizes Potter's testimony as speculative and claims that the $5.4 million loan was not in default and, therefore, cannot be used to consider whether Thomas Dunn was insolvent when he began making transfers of property to Lou Ann Dunn. She also disputes the assertion that Peoples Heritage was insolvent in 1986, thus making Thomas Dunn's stock in the holding company worthless.
 
 
 32
 Although the evidence presented at the hearing was not overwhelming or complete, we defer to the district court's factual finding that Thomas Dunn was insolvent. See Tri-State, 805 F.2d at 534. Potter testified that even if the $5.4 million loan was not technically in default, the loan had been delayed or modified several times by the Peoples Heritage Board of Directors, of which Thomas Dunn was a member.[3] He also testified that the number of worthless loans at Peoples Heritage in 1986 made it obvious that the institution was insolvent at that time. The district court found Potter to be a credible witness.
 
 
 33
 Finally, the district court noted that, in combination with the other indicia of fraud, the fact that Thomas Dunn and Lou Ann Dunn are husband and wife, coupled with the timing of the transactions, represents an additional indicia of fraud. Thus, after reviewing the record and the findings of the district court, we conclude that the district court did not err in finding that the RTC presented evidence of sufficient indicia of fraud to show that a fair ground for litigation exists with respect to its fraudulent conveyance claims.
 
 
 34
 Lou Ann Dunn also contends that the district court erred by freezing property interests that she owned several years prior to Thomas Dunn's involvement with Peoples Heritage. She generally argues that the district court impermissibly granted temporary relief, by freezing the entire properties, that is greater than the relief that the RTC could obtain even if it prevails on the merits. Here, appellant overstates her argument. The preliminary injunction only freezes the subject properties--a temporary and less serious remedy than the potential forfeiture of those properties if the RTC should prevail on the merits of its fraudulent conveyance claims.
 
 
 35
 Lou Ann Dunn further contends that although § 1821(d)(17) authorizes the RTC to freeze assets fraudulently conveyed, Kansas state law defines what property interests are subject to such a freeze. Specifically, appellant contends that, under Kansas joint tenancy law, the RTC could not reach her pre-existing one-half interests in the properties that the district court has frozen. However, § 1821(d)(17) provides that the RTC may recover not only the property fraudulently conveyed, but also "the value of such property (at the time of such transfer) from ... the initial transferee of such transfer." Thus, a personal judgment could arise against appellant as a result of her receipt of fraudulent transferred properties. If this occurs, the RTC will be able to reach her separate assets. Therefore, particularly given the temporary nature of the freeze on properties currently owned by Lou Ann Dunn, we conclude that the district court did not exceed its powers when it froze the subject properties pursuant to § 1821(d)(17).
 
 
 36
 Lou Ann Dunn also contends that the district court erred by subjecting her personal residence to the freeze. She argues that because her residence could not be reached to satisfy a final judgment under the Kansas homestead exemption, Kan.Stat.Ann. § 60-2301, the property cannot be the subject of a temporary freeze order. Although Kansas law appears to generally exempt a homestead from its fraudulent conveyance laws, see Winter v. Ritchie, 57 Kan. 212, 45 P. 595 (1896); Monroe v. May, Weil & Co., 9 Kan. 466, 476 (1872), the RTC complains of more than the mere conveyance of Lou Ann Dunn's homestead. In its complaint, the RTC alleges that the Dunns used funds fraudulently obtained by Thomas Dunn from Peoples Heritage to substantially improve their residence and to pay the mortgage on their home. At the preliminary injunction hearing, Lou Ann Dunn testified that substantial improvements to their home were funded by monies withdrawn from the joint account that she shared with her husband. Although Kansas courts have held that the transfer of a homestead is exempt from fraudulent conveyance laws, they have not addressed whether fraudulently obtained funds traced to a residence are protected by the homestead exemption. Moreover, courts from other jurisdictions have held that the homestead exemption does not shield fraudulently obtained funds that in effect are hidden within the homestead property. See Cox v. Waudby, 433 N.W.2d 716, 718 (Iowa 1988); Tabish v. Smith, 572 P.2d 378, 380 (Utah 1977). Therefore, we conclude that the RTC demonstrated a fair ground for litigating whether and to what extent Kansas' homestead exemption protects the Dunns' residence.
 
 
 37
 Finally, Lou Ann Dunn asserts that the district court erred by requiring that the trustee receive all income generated from the properties frozen by the court's orders. She contends that § 1821(d)(17) does not authorize the court to "give the RTC the right to receive the income generated from a property whose ownership is subject to challenge pending a final adjudication on the merits." She also argues, without citing supporting case law, that use of this income to search for and administer assets subject to the freeze constitutes an unconstitutional taking. We already have concluded that the district court did not abuse its discretion in subjecting the assets described above to its freeze order. It has long been established that
 
 
 38
 when no special circumstances appear which, upon equitable principles, would authorize the court to fix liability upon the plaintiff for [expenses of maintaining and preserving assets within the court's control], the general rule should be applied which makes such expenses a charge upon the property or fund under the control of the court.
 
 
 39
 Atlantic Trust Co. v. Chapman, 208 U.S. 360, 376, 28 S.Ct. 406, 411, 52 L.Ed. 528 (1908). Because special circumstances do not exist in this case, we hold that the district court did not err in applying this general rule to the trust it created in this case.
 
 
 40
 In conclusion, because the RTC adequately met each of the prerequisite showings for a preliminary injunction, we hold that the district court did not abuse its discretion by awarding such relief.
 
 
 41
 AFFIRMED.
 
 
 
 *
 The Honorable Albert J. Engel, Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 In relevant part, 12 U.S.C. § 1821(d)(18) provides that
 any court of competent jurisdiction, may at the request of ... the Corporation [the RTC] ... issue an order in accordance with Rule 65 of the Federal Rules of Civil Procedure, including an order placing the assets of any person designated by the Corporation ... under the control of the court and appointing a trustee to hold such assets.
 
 
 [2]
 Moreover, we note that neither party has briefed this issue on appeal
 
 
 [3]
 Potter testified that the $5.4 million loan was actually one of numerous loans totalling more than $23 million from Peoples Heritage to a project known as Westlake-McKinney 198 Joint Venture. He testified that he could not recall whether the $5.4 million loan for which Thomas Dunn was personally liable was technically in default at the time he began transferring assets to Lou Ann Dunn. He stated that "if it wasn't in default, I believe it may have been extended.... Peoples Heritage had this practice ... of extending and modifying loans. And a lot of these loans were modified or extended eight or nine times." This evidence, along with other portions of the record, support an inference that Thomas Dunn knew that he would be liable to pay the loan and that he was insolvent at that time