GEORGE WASHINGTON HOME OWN-
ERS ASSOCIATIONS, INC.; Historic
Montclair Community Association, Inc.,
a Colorado non-profit corporation; and
Mary A. McDonnell, an individual,
Plaintiffs,

v.

Sheila WIDNALL, Secretary of the United
States Air Force; Lt. Col. Gary Baum-
gartel; Col. Michael J. Wright; and
Robert L. Johnson, all in their official
capacities, Defendants,

and

City of Aurora, Colorado, a Colorado mu-
nicipal corporation; the City and Coun-
ty of Denver; Colorado Coalition for the
Homeless; and Lowry Economic Rede-
velopment Authority, Intervenors.

Civ. A. No. 94–S–1944.

United States District Court,
D. Colorado.

Sept. 29, 1994.

Mark A. Davidson, Leboeuf, Lamb, Greene & Macrae, Barbara J.B. Green, David H. Goldberg, Denver, CO, Lloyd W. Landreth, Gardere & Wynne, L.L.P., Tulsa, OK, for plaintiff/petitioner.

Henry L. Solano, U.S. Atty., Robert D. Clark, Asst. U.S. Atty., Andrew F. Walch, Environment and Natural Resources Div., U.S. Dept. of Justice, Denver, CO, Major Dawn Scholz, U.S. Air Force, Arlington, VA, for defendants.

Charles H. Richardson, Julia A. Bannon, Office of the City Atty., Aurora, CO, for City of Aurora.

Daniel E. Muse, City Atty., T. Shaun Sullivan, Asst. City Atty., Denver, CO, for City & County of Denver.

James W. Hubbell, Kelly/Haglund/Garnsey & Kahn, L.L.C., Denver, CO, for Colorado Coalition.

Peter R. Nadel, Malcolm M. Murray, Gorsuch Kirgis, L.L.C., Denver, CO, for Lowry Econ. Redevel. Auth.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

SPARR, District Judge.

THIS MATTER comes before the Court on Plaintiffs' motion for preliminary injunction filed August 19, 1994. The Defendants responded to the motion on September 7, and the Intervenors Lowry Economic Redevelopment Authority (LERA) and the Colorado Coalition for the Homeless (CCH), filed their responses on September 7, and September 8, respectively. Plaintiffs filed their reply to the responses on September 16, and the Defendants and CCH also filed surreplies. The matter is amply briefed. The Court held oral argument on September 23, 1994, and will incorporate its comments made in colloquy. For the reasons set forth below, the Court will now **DENY** the Plaintiffs' motion for preliminary injunction.

The Plaintiffs seek a preliminary injunction which would postpone the civilian reuse of Lowry Air Force Base (LAFB) scheduled to commence after closing of the base on September 30, 1994 until such time as additional information can be gathered through further studies and analysis of the environmental conditions at LAFB. The Defendants and Intervenors seek to preserve the hard-fought compromise agreement in which numerous parties participated. That agreement, as well as other documents, provide for civilian reuse of the base which is designed to revitalize economic and community development on the base and its surrounding areas. Intervenor LERA is an entity separate from the two cities of Denver and Aurora which surround the base, and it is charged with, by virtue of an agreement between Denver and Aurora, the responsibility of facilitating economic development, providing housing to the homeless, and other redevelopment efforts. The Intervenor CCH will provide transitional housing to eighty-five families at LAFB, and the city of Denver will receive $5 million from the U.S. Department of Housing and Urban Development to provide homeless housing throughout the Denver metropolitan area. Aurora, like Denver, has participated in the formulation of the Lowry Reuse Plan and the Recommended Lowry Disposition Plan, and it intends to immediately utilize some of the educational facilities at LAFB through the Community College of Aurora.

## I. Preliminary Injunction Standard

■ A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule. *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir.1984). The primary function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties, *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980), in order to preserve the power to render a meaningful decision on the merits. *Tri–State Generation & Transmission Ass'n v. Shoshone River Power, Inc.,* 805 F.2d 351, 355 (10th Cir.1986). The general basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies. *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct.

1798, 1803, 72 L.Ed.2d 91 (1982); *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 61, 95 S.Ct. 2069, 2077, 45 L.Ed.2d 12 (1975). In order to obtain preliminary injunctive relief, the moving party must establish:

(1) substantial likelihood that the movant will eventually prevail on the merits;

(2) a showing that the movant will suffer irreparable injury unless the injunction issues;

(3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

(4) a showing that the injunction, if issued, would not be adverse to the public interest.

*SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir.1991) (citation omitted).

### A. Burden of Proof

It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. The right to relief must be clear and unequivocal. *Id.* (citation omitted). In the present case, the movants' burden of proof in establishing the four factors is different from the more typical preliminary injunction. In the *SCFC ILC* case, the Tenth Circuit listed the following types of preliminary injunctions as disfavored and which require that the movant satisfy an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in the movant's favor before such an injunction may be issued:

(1) a preliminary injunction that disturbs the status quo;

(2) a preliminary injunction that is mandatory as opposed to prohibitory; and

(3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits.

The preliminary injunction requested by Plaintiffs here falls under both (1) or (3) above, and therefore the heightened standard is applicable to Plaintiffs' showing. A preliminary injunction that alters the status quo goes beyond the traditional purpose for pre-

liminary injunction, which is only to preserve the status quo until a trial on the merits may be had. *SCFC ILC*, 936 F.2d at 1099, citing *Otero Savings and Loan Association v. Federal Reserve Bank*, 665 F.2d 275, 277 (10th Cir.1981). In the present case, the status quo is not capable of being preserved as LAFB will close on September 30, 1994. The status quo which Plaintiffs describe involves prohibiting civilian reuse and leaving the base and its facilities vacant until an undetermined date. With regard to the issue presented by the declaratory judgment action being substantially similar and largely indistinguishable from the injunctive relief sought, the Tenth Circuit in *SCFC ILC* likened the preliminary injunction which awards the movant substantially all the relief to which he may be entitled to if successful on the merits to the "Sentence First—Verdict Afterwards" type of procedure parodied in Alice in Wonderland. Such procedure is anathema to our system of jurisprudence. 936 F.2d at 1099. *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d at 1098–99. With these considerations, the Court will now look at each particular element of the requisite showing.

### B. Analysis of Requisite Factors

#### 1. Substantial Likelihood That Movants Will Eventually Prevail on the Merits

Where the movant prevails on the other factors, the Tenth Circuit law requires application of a liberal definition of the probability of success requirement—it will ordinarily be enough that the movant has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for more deliberate investigation. *Lundgrin v. Claytor*, 619 F.2d at 63 (citation omitted). This, however, is not applicable here because we are dealing with special circumstances (1) and (3) as described in the *SCFC ILC* decision above. The Court must therefore examine whether Plaintiffs have demonstrated, in a compelling fashion, that they will eventually prevail on the merits.

■ The Court observes here at the outset that, due to the indistinguishable nature of relief sought under the preliminary injunction and the declaratory relief sought in the complaint, and because the Plaintiffs cannot establish that they are entitled to a preliminary injunction, they will likewise not prevail on the merits. The merits of this case concern the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.* There are a number of authorities which discuss NEPA, its purposes, and its functions. The Tenth Circuit in *Sierra Club v. Hodel*, 848 F.2d 1068, 1088 (10th Cir.1988) discussed the aims of NEPA: it seeks only to assure that environmental factors are considered in a meaningful manner before an agency commits to a major action. The decision then quotes from *Baltimore Gas & Electric Co. v. Natural Resources Defense Council*, 462 U.S. 87, 97–98, 103 S.Ct. 2246, 2252, 76 L.Ed.2d 437 (1983):

> NEPA has twin aims. First it places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process. *Congress in enacting NEPA, however, did not require agencies to elevate environmental concerns over other appropriate considerations.* Rather, it required only that the agency take a "hard look" at the environmental consequences before taking a major action. The role of the courts is simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious (emphasis added).

■ The proposed or major federal action here is the civilian reuse of LAFB. It is not the razing of wilderness for a federal construction project. While the proposed action at this point involves minimal changes in use due to civilian tenancy instead of a military one, there are potential reuses which may involve, at an undeterminable date in the future, changes in use which might implicate environmental changes at LAFB and its environs. The Federal Defendants have amply shown that, in compliance with the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, and other similar laws, as well as

NEPA (to the extent that it applies), the Final Environmental Impact Statement (FEIS) has taken the requisite "hard look" at the relevant environmental consequences. Plaintiffs have not met their heavy and compelling burden of demonstrating that the FEIS is not entitled to judicial deference. Intervenor LERA has asserted that the FEIS governs only the disposal of the property and not its reuse. This is a point well taken despite that fact that Plaintiffs maintained at oral argument that they might be entitled to more information under NEPA if the property were conveyed in fee rather than leased. The government is not required to undertake every possible test, study, or analysis which might be appropriate in particular circumstances. The requisite hard look does not require all possible information to be gathered—this Herculean task would make the planning of projects and estimation of completion dates practically impossible. The hard look determination is made on a case-by-case basis, and in this situation, the Court must conclude that the Plaintiffs have not established that, based on the exhaustive consideration of all relevant consequences under several applicable federal laws, the procedural or substantive provisions of NEPA have been violated.

### 2. The Movants Will Suffer Irreparable Injury Unless the Injunction Issues

■ To obtain the injunction, Plaintiffs must show that their potential injury, absent the injunction, outweighs the injury to Defendants and Intervenors if the injunction does issue. *Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1200 (10th Cir.1992). Here the Court must reject, as it did at oral argument, Plaintiffs' contention that due to the incomplete nature of the environmental analysis of LAFB, the Plaintiffs have suffered or will continue to suffer irreparable harm. The Plaintiffs have not indicated what the nature of their harm is, and have likewise failed to articulate any particular harm. The procedural violation of NEPA, standing alone, is insufficient as a basis for injunctive relief. *Weinberger v. Romero–Barcelo,* 456 U.S. at 311–13, 102 S.Ct. at 1803; *Amoco Production v. Gambell,* 480 U.S. 531, 541–44, 107 S.Ct. 1396, 1402–04, 94 L.Ed.2d 542

(1987); *Sierra Club v. Hodel,* 848 F.2d at 1096–97. Because Plaintiffs have failed to show any tangible harm to the environment, they are not entitled to an injunction. See *Sierra Club v. Marsh,* 872 F.2d 497 (1st Cir.1989). With regard to the Plaintiffs' arguments regarding futility, that the Plaintiffs cannot assert injury with specificity because the information which would form the basis of their allegations is either unavailable from the government or is a study which has not been undertaken, these arguments are also rejected. As set forth above, procedural violations of NEPA are insufficient grounds upon which to base injunctive relief. The Court cannot likewise infer particular violations as a result of unspecified possible results of analyses performed and not readily available or analyses never undertaken. It is also unclear how the alleged harm relates to or is otherwise mitigated by entry of an injunction. As Defendants and Intervenors have asserted, there is no irreparable harm or any harm that would pose a significant adverse impact on the human environment.

### 3. The Threatened Injury to the Movants Outweighs Whatever Damage the Proposed Injunction May Cause the Opposing Parties

■ There can be little question here that, in light of the fact that there is no threatened injury, and any injury which has taken place (to NEPA's procedural provisions) is insufficient to support an injunction, the Plaintiffs have not shown that the threatened injury to them (or a larger group of citizens) is greater than the injury to Defendants and Intervenors. The character of any injury to the Plaintiffs is past injury or speculative future injury. The NEPA, as interpreted by the Supreme Court in *Baltimore Gas & Electric Co. v. Natural Resources Defense Council,* 462 U.S. 87, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983), does not require that environmental concerns be placed above other legitimate concerns. This is what the Plaintiffs are essentially asking for, and it is improper. The closing of LAFB has involved the application of numerous and varied federal statutes. The Defendants and Intervenors have more than amply shown that the harm to

them which would result if an injunction issues is real and immediate, as opposed to Plaintiffs' harm, which is speculative and remote. Intervenor LERA would not be able to take possession of the property on the base and sublease to the CCH and others. All other anticipated uses would likewise be postponed for an indefinite period of time.

### 4. The Injunction, If Issued, Would Not Be Adverse to the Public Interest

█ Issuance of a preliminary injunction is appropriate only if the movant shows that the injunction would not be adverse to the public interest. *Resolution Trust Corporation v. Cruce,* 972 F.2d at 1201. As set forth clearly in the briefs of Intervenors CCH and LERA, an injunction would be overly broad and would adversely affect the public interest in a myriad of ways. The public interest is best served by implementation of the consensus effort which the Lowry Reuse Plan signifies. The duties of the federal government to follow all applicable statutes and laws (an injunction would place the Defendants in a very difficult position due to consequently conflicting duties), the interests of the homeless families who will move into transitional housing at LAFB, as well as the Community College of Aurora students who will attend classes on the Lowry campus, and the interests of the larger community (the other homeowners groups who are supportive of the plan) all figure into the public interest here.

### II. Conclusions

In consideration of the applicable standards for entering a preliminary injunction, the Court must conclude that Plaintiffs have failed to meet their burden of proof. Accordingly, Plaintiffs' motion for preliminary injunction is **DENIED.** A scheduling conference is set for **Thursday, October 6, 1994 at 10:00 a.m.** in Courtroom C–501, United States Courthouse, Denver, Colorado.

## ORDER DENYING MOTION TO DISQUALIFY

THIS MATTER comes before the Court on Plaintiffs' motion to disqualify Judge Daniel B. Sparr. On September 26, 1994, the Court made a disclosure on the record, with counsel and parties present, which informed the parties of information of which the undersigned judge became aware on Saturday, September 24, 1994.

### Consideration of 28 U.S.C. § 455(a)

█ The Court brought this to the parties' attention as part of its continuing duty, under 28 U.S.C. § 455(a), to ask itself what a reasonable person, knowing all the relevant facts, would think about his impartiality. *United States v. Greenspan,* 26 F.3d 1001, 1005 (10th Cir.1994), quoting *United States v. Hines,* 696 F.2d 722, 728 (10th Cir.1982). The essence of the disclosure was that the undersigned judge understood from one of his friends, Mr. R. Eric Peterson, that Mr. Peterson served on the board of Belle Bonfils Blood Center, and that his law firm, White and Steele, P.C., might currently represent Belle Bonfils. One of the shareholders in the law firm of White and Steele, P.C., is Stephen Sparr, the undersigned judge's eldest son. The Belle Bonfils Blood Center is not a party to this proceeding, but at oral argument of the Plaintiffs' motion for preliminary injunction, the Court understood that it was a potential lessee of property from Intervenor Lowry Economic Redevelopment Authority. The details of the disclosure are set forth in more detail in the record from that proceeding on September 26, 1994. The Court must initially observe that the mere fact that the Court brought this to the parties' attention is not determinative of the disposition of this issue, as a judge has as much obligation not to recuse himself where there is no reason to do so as he does to recuse himself when the converse is true. *Greenspan,* 26 F.3d at 1005 (citation omitted). In applying § 455(a), the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue, but rather whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality. *United States v. Cooley,* 1 F.3d 985, 993 (10th Cir. 1993) (citations omitted).

The reasonable person test referred to above is a purely objective standard. *United States v. Cooley,* 1 F.3d 985, 993 (10th Cir.

1993). The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom. In applying the test, the initial inquiry is whether a reasonable *factual* basis exists for calling the judge's impartiality into question. *Id.*, 1 F.3d at 993 (emphasis in original), citing *United States v. Gipson*, 835 F.2d 1323, 1325 (10th Cir.), *cert. denied*, 486 U.S. 1044, 108 S.Ct. 2038, 100 L.Ed.2d 623 (1988). The language of § 455(a) includes the term "reasonably" as a qualifier to when a judge's impartiality might be questioned. The Court must also observe here that, at the time the undersigned judge became aware of the disclosure at issue, determination of the merits of the Plaintiffs' motion for preliminary injunction had already been made. Beginning on the afternoon following the morning oral argument on the motion on September 23, 1994, the Court's staff began formalizing and preparing the order for signature. The mental processes regarding the ruling had already occurred, and only the signature of the order, a ministerial task, remained to be completed.

The term "reasonably" from 28 U.S.C. § 455(a) and the section as a whole must not be so broadly construed that it becomes in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice. *Franks v. Nimmo*, 796 F.2d 1230, 1234 (10th Cir.1986), quoting *United States v. Hines*, 696 F.2d at 729. The statute is not intended to give litigants a veto power over sitting judges, or be a vehicle for obtaining a judge of their choice, and the Tenth Circuit's decision in *Cooley*, 1 F.3d at 993, contains a discussion of limitations on challenges based on both § 455(a) or (b) grounds. Cognizant of both the duty to disqualify and the duty to sit, as well as the requisite determinations regarding these duties which must be made here, the Court must conclude there is no reasonable factual basis (or inference drawn therefrom) on which to call into question the impartiality of the undersigned judge.

### Consideration of 28 U.S.C. § 455(b)

■ Section 455(b) contains a list enumerating specific circumstances in which disqualification is mandated. Plaintiffs apparently have asserted that disqualification is appropriate under § 455(b)(5)(iii) because the undersigned's son, a shareholder in White and Steele, P.C., stands to directly benefit from any representation which Belle Bonfils Blood Center might receive from White and Steele. The Plaintiffs cite to *Potashnick v. Port City Construction Co.*, 609 F.2d 1101 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980), in support of their arguments. This decision is, however, inapposite to the present situation, and as set forth in Intervenor Lowry Economic Redevelopment Authority's brief in opposition to the motion for disqualification, more compelling and more recent authority exists. The remoteness of the relationship between Belle Bonfils Blood Center and this litigation is striking. In addition, there is lacking the requisite knowledge of interest. As disclosed by the undersigned, it was understood that a relationship between the law firm of White and Steele, P.C. and Belle Bonfils Blood Center existed. There was not knowledge on the part of the undersigned that his son had an interest in the outcome of this proceeding, and there are no such facts to support such a tenuous inference. As indicated by the affidavit of Kurt Horton, of White and Steele, P.C., which was submitted by Intervenor Lowry Economic Redevelopment Authority on September 28, 1994, the firm of White and Steele, P.C., has been contacted about representing the Belle Bonfils Memorial Blood Bank regarding the possible purchase or lease of property at Lowry, but has not accepted such representation. Mr. Horton's affidavit further indicates that if such representation is sought, it will be declined. This affidavit removes any question from the propriety of proceeding in this case, and it is clear that recusal is not proper under § 455(b)(5)(iii) or other subsections of § 455(b).

### Importance of Maintaining Judicial Impartiality

As the Tenth Circuit observed in *Greenspan*, there are few characteristics of a judiciary more cherished and indispensable to justice than the characteristic of impartiality. Congress has mandated that justice must not only be impartial, but also that it must rea-

sonably be perceived to be impartial. 26 F.3d at 1007, citing 28 U.S.C. § 455(a). As explained by the Supreme Court in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859–60, 108 S.Ct. 2194, 2202–03, 100 L.Ed.2d 855 (1988), the purpose of section 455(a) is to promote public confidence in the integrity of the judicial process. The subsection applies to the varied and unpredictable situations not subject to reasonable legislative definition in which judges must act to protect the very appearance of impartiality. *United States v. Gipson*, 835 F.2d 1323, 1325 (10th Cir.1988). The disclosure made by the Court on September 26, 1994, was to promote the value of impartiality, and it was made due to the possible risk of offending that value.

 Recusal under § 455 is to be judged on the record. It is not a question of either movants or opponents bearing a burden of proof. Rather, recusal is an action taken by the judge, and the judge must document the reasons for his decision so that the decision may be reviewed, if necessary, by an appellate court. *Greenspan*, 26 F.3d at 1007. The decision to recuse is committed to the sound discretion of the district court. *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir.1992), *Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir.1987). As indicated above, and in light of the submissions tendered to the Court, as well as the applicable authorities, the Court must conclude that it would be improper to disqualify itself at this time or a future time from these proceedings.

Accordingly, Plaintiffs' motion for disqualification is **DENIED.**