**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Capacity as Receiver of American National Bank—Post Oak, Plaintiff,**

v.

**Charles G. FLOYD, Jr., Defendant.**

**Civ. No. 3:93–CV–1272–H.**

United States District Court,
N.D. Texas,
Dallas Division.

July 20, 1993.

Roy G. Morris, F.D.I.C., and Joseph W. Spence, F.D.I.C., Legal Div., Dallas, TX, for plaintiff.

Jeffie J. Massey and Michael S. Fawer, Dallas, TX, for defendant.

## *MEMORANDUM OPINION AND ORDER*

SANDERS, Chief Judge.

Before the Court are FDIC's Application for Preliminary Injunction, filed June 28, 1993; Defendant's Materials in Opposition to the Motion, filed July 9, 1993; and the FDIC's Materials and Affidavits in Support of the Motion, filed July 9, 1993.

## I. BACKGROUND

This is a suit for collection of a promissory note for $240,000, plus interest in the approximate amount of $23,372.83. The obligation is allegedly owed by Defendant Floyd to American National Bank—Post Oak ["the bank"]. Plaintiff FDIC is acting in its capacity as Receiver for the bank.

A temporary restraining order was issued on July 2, 1993. The order restrains $263,-372.83 of Floyd's funds currently on deposit in the Registry of the Court. For the FDIC's application for preliminary injunction, the Court has received and considered affidavit evidence and trial briefs. No oral hearing will be held.

On March 2, 1993, this Court issued an order in *United States v. Floyd,* 814 F.Supp. 1355 (N.D.Tex.1993) ["the criminal action"], restraining $450,000 of Defendant Floyd's funds under 18 U.S.C. § 982(b)(1). The funds had previously been repatriated from Liechtenstein by Order of January 13, 1993, in the criminal action. Approximately $401,-179 was actually placed in the Registry of the Court. Of that total sum, approximately $259,331 represented proceeds from the sale of Floyd's house; the remaining $142,388 represented part of a $217,000 payment to Floyd from United Bank of Lancaster. *See* Def.'s Memo. in Advance of Conf., filed Jan. 21, 1993.

On May 20, 1993, the Fifth Circuit ruled that 18 U.S.C. § 982(b)(1) does not authorize such restraint of Floyd's funds. *See United States v. Floyd,* 992 F.2d 498 (5th Cir.1993). The Circuit issued its mandate on July 2, 1993.

On June 25, 1993, a seizure warrant in Cause No. 3:93–236M ["the warrant action"] was issued to seize $142,388 of Floyd's funds still in the registry prior to the issuance of the Fifth Circuit's mandate. The warrant was properly served on the United States District Court Clerk's Office on June 25, 1993. Return was timely made to United States District Magistrate Judge Jane J. Boyle. On July 16, 1993, the Court authorized release of $142,388 of Floyd's funds from the registry pursuant to the warrant.

On July 1, this Court issued an order, under 12 U.S.C. § 1821(d)(18), temporarily restraining $263,372.83, which constitutes the remaining funds in the registry. *See FDIC v. Floyd,* Civ. No. 3:93–CV–1272–H

(N.D.Tex., July 1, 1993) ["the civil action"]. It now remains to decide the fate of those remaining funds. The FDIC argues that the money should be preliminarily enjoined until resolution of the civil action. Floyd argues that the funds should be immediately released to him under the Fifth Circuit's mandate. For the reasons that follow, the Court agrees with Defendant Floyd.

## II. PRELIMINARY INJUNCTION UNDER 12 U.S.C. § 1821(d)(18)

### A. Requirement of Fraudulent Conduct

The FDIC brings this motion for preliminary injunction under a subsection of the Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990, Pub.L. No. 101–647, Stat. 4789. *See* 12 U.S.C. § 1821(d)(18) (Supp.1991). Section 1821(d)(18) of Title 12 authorizes the Court to issue a preliminary injunction enjoining certain assets at the request of the FDIC, as receiver of a failed banking institution. That section follows in relevant part:

> Subject [to] paragraph (19), any court of competent jurisdiction may, at the request of ... the Corporation (in the Corporation's capacity as conservator or receiver for any insured depository institution) ... issue an order in accordance with Rule 65 of the Federal Rules of Civil Procedure.

12 U.S.C. § 1821(d)(18). Section 1821(d)(19) limits the above section:

> Rule 65 of the Federal Rules of Civil Procedure shall apply with respect to any proceeding under paragraph (18) without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate.

12 U.S.C. § 1821(d)(19).

Generally, under Rule 65, one who petitions for a preliminary injunction must prove (1) a substantial likelihood of success on the merits of the underlying claim; (2) a substantial threat of irreparable injury should the injunction not issue, for which there is no adequate remedy at law; (3) that the threatened injury outweighs any damage that the injunction may cause; and (4) that the injunction will not disserve the public interest. *Doe v. Duncanville Indep. School Dist.,* 994 F.2d 160 (5th Cir.1993); *Apple*

*Barrel Productions, Inc. v. Beard,* 730 F.2d 384, 386 (5th Cir.1984); Fed.R.Civ.P. 65. Under § 1821(d)(19), the FDIC need not show irreparable injury for which there is no adequate remedy at law. 12 U.S.C. § 1821(d)(19); *see FDIC v. Faulkner,* 991 F.2d 262 (5th Cir.1993).

The question that confronts the Court today is whether § 1821(d)(18)–(19) may be invoked by the FDIC in a lawsuit for the simple collection of a promissory note. The Court finds no authority directly on point. In the decisions that have construed and applied 1821(d)(18)–(19), the underlying suit involved, at least in part, allegations of fraudulent conduct. *See, e.g., Faulkner,* 991 F.2d at 264–65; *RTC v. Cruce,* 972 F.2d 1195 (10th Cir.1992); *FDIC v. Cafritz,* 762 F.Supp. 1503 (D.D.C.1991). In those cases, the complaining federal banking agency sought temporary restraint of assets in conjunction with its attempt to avoid allegedly fraudulent transfers under 12 U.S.C. § 1821(d)(17). *See Faulkner,* 991 F.2d at 264–65; *Cruce,* 972 F.2d at 1197–98; *Cafritz,* 762 F.Supp. at 1505–08. Section 1821(d)(17) follows, in relevant part:

> The Corporation, as conservator or receiver for any insured depository institution, ... may avoid a transfer of any interest of ... any person who the Corporation ... determines is a debtor of the institution ... if such party or person voluntarily or involuntarily made such transfer or incurred such liability *with the intent to hinder, delay, or defraud* the insured depository institution [or] the Corporation.

12 U.S.C. § 1821(d)(17)(A) (emphasis added).

In a petition for preliminary injunction in a case brought under § 1821(d)(17), the first element of the applicable preliminary injunction standard necessarily requires showing a substantial likelihood of success that a transfer was made to "hinder, delay, or defraud" the complaining banking institution or federal banking agency. 12 U.S.C. § 1821(d)(17); *see Cruce,* 972 F.2d at 1199–1200. In this suit, on the other hand, the FDIC argues that to restrain Floyd's funds it must show only (1) a substantial likelihood of recovery on the promissory note; (2) that the equities

weigh in its favor; and (3) that the public interest would not be disserved by issuance of a preliminary injunction. If such were the case, the FDIC would be required to show neither irreparable harm nor fraudulent conduct to obtain a preliminary injunction in a simple action for damages at law. The Court cannot agree with such a premise.

■ In the first place, the Court is of the view that the FDIC must show "some" injury under the statute. The language of the statute itself so indicates. The subsection could have been phrased to eliminate a "showing of irreparable or immediate harm." Instead, it is phrased to dispense with a showing "that the injury, loss, or damage is irreparable and immediate." 12 U.S.C. § 1821(d)(19). The clear implication in the wording is that although a showing of injury, loss, or damage is required, it need not be irreparable or immediate. Such a construction is supported by the legislative history:

> New paragraph (19) ... waives the requirement of Rule 65 of the Federal Rules of Civil Procedure that a showing of irreparable or immediate injury is necessary prior to the Corporation's receiving a temporary restraining order. *Congress still intends that the Corporation be required to make some showing of injury* prior to obtaining relief.

136 Cong.Rec. E3684-02 (daily ed. Nov. 2, 1990) (extension of remarks of Rep. Schumer) (emphasis added). "Some showing of injury" has been held by the Tenth Circuit to be required in petitions under § 1821(18)–(19). *See Cruce,* 972 F.2d at 1200. Furthermore, the Fifth Circuit did not negate such a requirement in its only decision concerning the statute. Instead, the court, citing *Cruce,* found that the FDIC had properly shown some potential injury, as evidenced by past fraudulent conduct, and had "[t]herefore ... met all the statutory requirements for obtaining a preliminary injunction." *Faulkner,* 991 F.2d at 267 n. 6.

■ The FDIC's interpretation of § 1821(d)(18)–(19) is deficient also because it requires no showing of fraudulent conduct associated with the underlying action. Because of the elimination of the requirement of irreparable injury, § 1821(d)(18)–(19) pro-

vides the FDIC with a potent weapon; the commonplace collection of a promissory note does not warrant such heavy artillery in the absence of fraudulent conduct.

■ This view is supported by the grouping of subsections (18) and (19) with subsection (17), which allows the FDIC to avoid fraudulent transfers. The common-sense approach is to read the three subsections as a package. The Fifth and Tenth Circuits have implicitly done so. *See Faulkner,* 991 F.2d at 264–65, 268 (affirming an award of preliminary injunction under § 1821(d)(18) in a case for avoidance of allegedly fraudulent transfers under § 1821(d)(17)); *Cruce,* 972 F.2d at 1199–1200 (same). The Court finds no authority for the proposition that § 1821(d)(18) can stand alone.

The legislative history is revealingly silent on any proposed application of subsections (18)–(19) in the absence of subsection (17). Instead, the legislative history provides generally:

> Subtitle B of the legislation, which is aimed at protecting assets from wrongful disposition, expands the authority of [the FDIC] to enjoin the dissipation of assets wrongfully obtained [and] to void fraudulent transfers.

*Id.; see Cruce,* 972 F.2d at 1199 ("The text of § 1821(d)(17)–(19) evidences Congress' clear intent to augment the RTC's ability to avoid fraudulent conveyances or to freeze assets that may have been fraudulently conveyed by parties related to insured depository institutions."). The clear intent of Congress in these subsections is to address fraudulent activity.

Even the district court decision on which the FDIC relies for its position did not award a preliminary injunction in the complete absence of a showing of fraud. In *FDIC v. Cafritz,* 762 F.Supp. 1503 (D.D.C.1991), the court restrained property allegedly fraudulently transferred to escape acknowledged liability under loan agreements with the FDIC. *See id.* at 1505–08, 1510. The court also restrained some of the defendant's funds that were not the subject of any of the alleged transfers. *See id.* at 1508, 1510.

With reference to the restraint of those additional, non-transferred funds, the court said:

> Again, the operation of the statute is a question of first impression. There is no reason to reject the FDIC's position at this stage of the litigation. The Court believes that there exists a substantial likelihood that the FDIC could prevail on this claim. None of the parties have disputed [defendant's] indebtedness to [FDIC] under the loan agreements. As explained above, *there also exists a substantial likelihood that the FDIC can prove that [defendant] made the alleged fraudulent conveyances.* On this basis, the FDIC may demonstrate Mr. Cafritz's desire to dissipate assets at the expense of the FDIC. This is a strong basis, at this stage of the case, for the Court to exercise its equitable power.

*Id.* at 1508. Although the *Cafritz* court allowed restraint of assets not shown to be fraudulently conveyed, it required a showing that the defendant would be likely to dissipate assets in the absence of an injunction. The court relied on proof of a previous fraudulent conveyance to meet that showing. Accordingly, injunctive relief was not granted in the absence of fraudulent activity.

■ For the reasons given above, the Court concludes that a petition for preliminary injunction brought under 12 U.S.C. § 1821(d)(18)–(19) must include a showing of fraudulent conduct. Otherwise, the statute operates to afford Draconian relief to the FDIC under everyday circumstances. If the underlying lawsuit alleges fraudulent conduct, as in a case brought under § 1821(d)(17), the issue is necessarily addressed in the traditional requirement of showing a substantial likelihood of success on the merits. If the underlying lawsuit does not allege fraudulent activity, as in this case, a petition for preliminary injunction must show some potential injury evidenced by a clear nexus between past fraudulent conduct and the property for which restraint is sought under the facts of the underlying suit.

### B. FDIC's Petition

■ Applying the requirements for preliminary injunction under § 1821(d)(18), as construed above, the Court denies the FDIC's petition in this case. The FDIC has shown to the Court's satisfaction that it is substantially likely to prevail in the underlying action for collection of the promissory note. *See* Aff. of James Kilpatrick (attesting that the FDIC is the owner and holder of the note, which Floyd signed; that the note is in default; and that demand has been made); *see also* 12 U.S.C. § 1823(e) (limiting defenses to the FDIC's collection of notes in default). Too, the FDIC meets its burden in the final two elements of weighing the equities and assessing the public interest.

The FDIC is unable, however, to show any fraudulent activity by Floyd that would support a claim of potential injury. In this case, the FDIC cannot argue that it is attempting to avoid an allegedly fraudulent transfer. The funds at issue are proceeds from the sale of Floyd's house. When released to Floyd from the Court's registry under the mandate in the criminal action, the funds will still be under Floyd's—and not a third party's—ownership and control. Although it is true that Floyd sent the funds out of the country in Fall 1992, prior to the filing of this case, that "transfer" has already been avoided in the criminal action. *See United States v. Floyd,* 814 F.Supp. 1355 (N.D.Tex.), *rev'd,* 992 F.2d 498 (5th Cir.1993).

■ The sending of funds to Liechtenstein might under some circumstances arguably serve as an "indicia of fraud." *Cf. Roland v. United States,* 838 F.2d 1400, 1402 (5th Cir.1988). In this case, however, the FDIC has not met its burden of connecting that action with its attempted collection of the promissory note. If, as the FDIC alleges, Floyd failed to make the Spring 1992 quarterly payment on the note, he would have been in default under the note's terms. *See* Kilpatrick's Aff., Exhs. 1, 2. On June 17, 1992, a representative of the bank "discussed the need to receive the past due payment" with Floyd. *Id.,* Exh. 2. Demand for payment of the note itself, however, was not made until January 29, 1993, some weeks after Floyd had sent the funds to Liechtenstein. Under these circumstances, the Court does not find any fraudulent conduct to sup-

port preliminary injunctive relief under the statute.[1]

## III. PRELIMINARY INJUNCTION UNDER RULE 65

 Neither does the FDIC meet the traditional standards for preliminary injunction under Rule 65. *See Apple Barrel*, 730 F.2d at 386; Fed.R.Civ.P. 65. In support of its application, the FDIC offers no proof of irreparable harm that cannot be undone with money damages. *See Spiegel v. Houston*, 636 F.2d 997, 1001 (5th Cir.1981); *see also In re Fredeman Litig.*, 843 F.2d 821, 824 (5th Cir.1988) ("The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment."). Accordingly, the FDIC fails to meet its burden for preliminary injunctive relief.

## IV. CONCLUSION

For the reasons given above, the temporary restraining order in this case is **DISSOLVED.** The FDIC's application for preliminary injunction is **DENIED.** The funds will be released from the Registry of the Court by separate order in the criminal action.

SO ORDERED.

---

**1.** Defendant Floyd's counsel has represented to the Court that he entertained the alternative, in the criminal action, of leaving the funds in Liechtenstein in violation of the Court's order for repatriation, even under the threat of a citation for contempt. That mere representation, however, does not without more support an inference of past or future "fraudulent" conduct.