**NATIONAL CREDIT UNION ADMINIS-TRATION BOARD as liquidating agent for Amalgamated Taxi Federal Credit Union, Plaintiff,**

v.

**CONCORD LIMOUSINE, INC. and Concord Two Way Radio, Inc., Defendants.**

No. CV 94–815.

United States District Court, E.D. New York.

Jan. 9, 1995.

Heller & Rosenberg, P.C., Garden City, NY (Darren T. Kaplan, of counsel), for plaintiff.

Michael Aizin, Brooklyn, NY, for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

On August 17, 1990 the National Credit Union Administration Board (the "Board") declared Amalgamated Taxi Federal Credit Union ("Amalgamated") insolvent and appointed itself as liquidating agent.

The Board as Liquidating Agent for Amalgamated ("plaintiff") brought this action under 12 U.S.C. § 1789(a)(2) alleging that defendants fraudulently induced Amalgamated to make certain loans and failed to honor a guarantee of the loans.

Pursuant to Federal Rule of Civil Procedure 65 and 12 U.S.C. § 1787(b)(2)(G), plaintiff now moves for a preliminary injunction placing defendants' assets in the control of a trustee appointed by the court. Plaintiff also moves for leave to file an amended complaint.

### I

Defendants, corporations operating a radio-dispatched car service, sell franchises or "radio rights" that entitle the purchasers to obtain fares through defendants' dispatcher.

From September 1986 to May 1990, Amalgamated made loans to several of defendants' franchisees. The loans were secured by the borrowers' franchises. Thereafter, the borrowers defaulted on the loans, and plaintiff auctioned the franchises securing the loans.

Plaintiff brought this action on February 25, 1994, alleging that Amalgamated made the loans pursuant to a September 24, 1986 agreement (the "Guarantee") whereby defendants guaranteed the loans, and that upon the borrowers' default, defendants failed to honor the Guarantee. Plaintiff also claimed that defendants, aware that Amalgamated had liens upon the collateral, refused to honor plaintiff's sale of the collateral.

Defendants answered on April 21, 1994 alleging that they did not enter into the Guarantee, that they were not aware of Amalgamated's liens, and that plaintiff's auction of the collateral was ineffective without their consent.

On December 15, 1994 plaintiff moved for and this court denied a temporary restraining order restraining defendants from transferring any of their assets pending decision of plaintiff's motion for a preliminary injunction placing defendants' assets in the control of a trustee. Plaintiff also filed and served a proposed amended complaint.

The court held a hearing on the preliminary injunction motion on December 20, 1994. Plaintiff said that defendants had fraudulently conveyed the collateral securing the loans, and that this effort to defraud plaintiff demonstrated the need for the injunction. Defendants admitted that they had sold the franchises, but alleged that they had done so because their franchisees had failed to make monthly fee payments to them. Defendants also offered to set aside the same number of franchises as security for plaintiff's claims.

## II

 Federal Rule of Civil Procedure 15 provides that after a responsive pleading is served, "a party may amend the party's pleading only by leave of court ... and leave shall be freely given when justice so requires."

In the original complaint, plaintiff set out five causes of action: (1) for damages arising from defendants' failure to honor the Guarantee upon eight loan defaults, (2) for specific performance of the Guarantee, (3) for damages arising from defendants' failure to ac-

knowledge plaintiff's sale of the collateral, (4) for treble damages arising from defendants' fraudulent inducement of Amalgamated's agreement to the loans, and (5) for declaratory judgment of the validity of its liens upon any of defendants' franchises pledged to it as collateral.

In the proposed amended complaint, plaintiff makes different factual allegations than it did in the original complaint. As to the first three causes of action, plaintiff alleges three additional loan defaults. As to the fourth cause of action, plaintiff now alleges that defendants fraudulently conveyed the collateral, not that defendants fraudulently induced Amalgamated to make the loans. Plaintiff also adds a sixth cause of action, alleging that defendants violated state law by fraudulently conveying the collateral.

The court grants plaintiff leave to amend the complaint. Although plaintiff makes no showing of cause, defendants do not oppose the motion, and there is no apparent reason why leave to amend should not be " 'freely given' ". *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

 But in deciding plaintiff's motion for a preliminary injunction, the court refers to the causes of action set out in the original complaint. Until plaintiff serves defendants with the amended complaint, it does not supercede the original complaint. *See International Controls Corp. v. Vesco,* 556 F.2d 665, 669 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978).

## III

 The standards for issuing a preliminary injunction in this circuit are clear. A party seeking a preliminary injunction must show:

> "(1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief."

*Haitian Ctrs. Council, Inc. v. McNary,* 969 F.2d 1326, 1338 (2d Cir.1992), *vacated as moot,* —— U.S. ——, 113 S.Ct. 3028, 125

L.Ed.2d 716 (1993) (quoting *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 (2d Cir.1991)); *see also Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

Congress explicitly modified these standards as they apply to Rule 65 motions made by the Board. Section 1787(b)(2)(H)(i) of Title 12 of the United States Code states in pertinent part:

> Rule 65 of the Federal Rules of Civil Procedure shall apply with respect to any proceeding [by the Board to obtain an injunction placing a party's assets under the court's control] *without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate.* (emphasis added)

No published case examines the proper application of this provision. But its language is substantially similar to that of Section 1821(d)(19) of Title 12, which applies to the Federal Deposit Insurance Corporation and the Resolution Trust Corporation (collectively, the "Corporations") and its legislative history shows that Congress intended it "to give the [Board] authority that parallels the authority of the [Corporations]" under 12 U.S.C. § 1821. 136 Cong.Rec. E3684 at E3686 (daily ed. Nov. 2, 1990). In construing 12 U.S.C. § 1787, the court looks to cases interpreting 12 U.S.C. § 1821.

■ The plain language and the legislative history of the statute reveal that although Congress intended to relieve the Board of the burden of showing irreparable harm, it did not propose to eliminate entirely the requirement that the Board make a showing of harm. *See* 136 Cong.Rec. E3684 at E3686 (daily ed. Nov. 2, 1990) (Rep. Schumer) ("Congress still intends that the [Board] be required to make some showing of injury prior to obtaining relief."). *See also Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1200 (10th Cir.1992); *Federal Deposit Insur. Corp. v. Floyd,* 827 F.Supp. 409, 413 (N.D.Tex.1993); *but see Federal Deposit Insur. Corp. v. Cafritz,* 762 F.Supp. 1503, 1506 (D.D.C.1991).

■ Though the injury complained of need not be irreparable, it must be "imminent, not remote or speculative." *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990). Plaintiff must show that it is "*likely* to suffer ... harm if equitable relief is denied." *Borey v. National Union Fire Insur. Co.,* 934 F.2d 30, 34 (2d Cir.1991) (emphasis in original) (citations omitted). *But see Cruce,* 972 F.2d at 1201.

■ Plaintiff argues that it is likely to be injured if the injunction is denied because it probably will not be able to collect a potential judgment against defendants. The facts do not support that conclusion.

In support of its contention that defendants are liable to transfer their assets to avoid a judgment, plaintiff points to defendants' purportedly fraudulent conveyance of the franchises. But plaintiff proffers no evidence tending to show that defendants sold the franchises with the intent to defraud secured creditors. *See* N.Y.Debt. & Cred. § 276.

Moreover, plaintiff ignores defendants' offer to place franchises in escrow until the parties' competing claims can be resolved. Such an offer is inconsistent with an intent to frustrate a potential judgment.

By relaxing the requirements plaintiff must meet in seeking a preliminary injunction, Congress has provided it with a powerful weapon intended to "enhance the ability of ... Federal bank regulatory agencies to prevent dissipation of property and assets." Cong.Rec. E3684 at E3686 (daily ed. Nov. 2, 1990).

At least one court has relied on this legislative history in holding that a federal agency may not seek injunctive relief under this lowered standard without making a showing of fraudulent conduct, noting that "[o]therwise, the statute operates to afford Draconian relief to [the agency] under everyday circumstances." *Floyd,* 827 F.Supp. at 414. *But see Federal Deposit Insur. Corp. v. Owen,* 1991 U.S.Dist. LEXIS 20575 (D.Conn. Sept. 3, 1991) (Eagan, Mag.), *adopted,* 1992 U.S.Dist. LEXIS 12145 (D.Conn. Apr. 27, 1992).

Whether or not a showing of fraudulent conduct is a prerequisite to the grant of a preliminary injunction pursuant to 12 U.S.C. § 1787(b)(2)(H)(i), plaintiff's mere allegation of past fraudulent conduct is insufficient to establish imminent harm.

■ Plaintiff also says that because defendants are closely held corporations, their assets could be transferred very easily. Even if that is true, it demonstrates only that dissipation of the assets is possible, not that it is probable.

■ Finally, plaintiff alleges that because defendants rarely have more than a few thousand dollars cash on hand, it may not be able to collect a judgment against them. But in seeking satisfaction of a potential judgment, plaintiff is not limited to defendants' bank accounts. Defendants attest that they have gross assets of approximately $7 million. Even if plaintiff prevails on all of the claims set out in the original complaint, its damages will not exceed approximately $800,-000.

### IV

The court grants plaintiff's motion to amend the complaint, and denies its motion for a preliminary injunction.

So ordered.