RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NATIONAL CREDIT UNION ADMINISTRATION BOARD, acting in its capacity as liquidating agent for St. Paul Croatian Federal Credit Union,

    *Plaintiff-Appellee/Cross-Appellant* (14-4297 & 15-3324),

    *Plaintiff-Appellant* (17-3162),

    *v.*

STAN JURCEVIC,

    *Defendant-Appellant/Cross-Appellee* (14-4297 & 15-3324),

    *Defendant-Appellee* (17-3162),

BARA JURCEVIC; STACK CONTAINER SERVICE, INC.,

    *Defendants-Appellees* (17-3162).

Nos. 14-4297/ 15-3324/ 17-3162

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:14-cv-00926—Donald C. Nugent, District Judge.

Argued: August 3, 2017

Decided and Filed: August 11, 2017

Before: SUTTON, McKEAGUE, and THAPAR, Circuit Judges.

---

## COUNSEL

**ARGUED:** Timothy J. Fitzgerald, KOEHLER FITZGERALD LLC, Cleveland, Ohio, for Stan Jurcevic in 14-4297, 15-3324, and 17-3162 and for Bara Jurcevic and Stack Container Service, Inc. in 17-3162. Gregory G. Rapawy, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C., for National Credit Union Administration Board in 14-4297, 15-3324, and 17-3162. **ON BRIEF:** Timothy J. Fitzgerald, KOEHLER FITZGERALD LLC, Cleveland, Ohio, for Stan Jurcevic in 14-4297, 15-3324, and 17-3162 and for Bara Jurcevic and Stack Container Service, Inc. in 17-3162. Gregory G. Rapawy, David C. Frederick, Daniel V. Dorris, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.,

Washington, D.C., for National Credit Union Administration Board in 14-4297, 15-3324, and 17-3162.

_____

**OPINION**

_____

SUTTON, Circuit Judge.  The National Credit Union Administration Board accused Stan and Bara Jurcevic and their privately owned company, Stack Container Service, of fraudulently obtaining loans from St. Paul Croatian Federal Credit Union.  In response, the district court enjoined Stan Jurcevic from disposing of all of his assets, save living expenses, before the trial over these allegations.  It also dismissed the Board's tort claims as time barred under the relevant federal statute and dismissed its unjust enrichment claims against Bara Jurcevic and Stack Container as insufficiently pleaded.  Both sides appealed.

Because the district court properly employed the preliminary injunction factors, we affirm the asset freeze.  But because the district court did not consider both potential accrual dates under the limitations statute, we remand for further consideration of the timeliness of the tort claims.  And a full review of the Board's complaint requires us to reverse the district court's conclusion as to the unjust enrichment claims against Bara Jurcevic and Stack Container.  We thus affirm in part and reverse in part.

I.

In early 1990, Stan and Bara Jurcevic opened a joint account at the St. Paul Croatian Federal Credit Union.  Unlike traditional lending institutions, credit unions operate as "cooperative[s]" where account holders own shares of the company as credit union "members." R. 38 at 3.  The National Credit Union Administration Board charters and insures these unions, safeguarding members in the event of collapse.  *See* 12 U.S.C. §§ 1766, 1786(h), 1787.  In times of trouble, the Board has authority to place a credit union into conservatorship, a status akin to a Chapter 11 bankruptcy reorganization.  If things get worse, it may liquidate the credit union, a process akin to a Chapter 7 liquidation.  Though the Board can appoint another entity (such as a state regulator) to serve as conservator for any credit union or liquidating agent for any non-

federally insured credit union, only the Board itself may liquidate an insolvent federally insured credit union. *See Id.* §§ 1786(h), 1787(a)(1)(A), (3).

From 1996 to 2010, Stan Jurcevic obtained over $1.5 million in share-secured personal loans from St. Paul. At the end of this fourteen-year period, Jurcevic owed about $1.7 million to the credit union. Around this time, federal auditors discovered that St. Paul's Chief Operating Officer, Anthony Raguz, had been accepting bribes in exchange for issuing loans and disguising unpaid loan balances. After revealing this scheme and discovering the credit union's insolvency—the union had over $200 million in unpaid debts—the National Credit Union Administration Board placed St. Paul into conservatorship and eventually liquidated its remaining assets.

According to the Board, Stan Jurcevic shared in the spoils that led to St. Paul's demise. Jurcevic allegedly misrepresented some facts and omitted others on multiple loan applications and engaged in other misbehavior at St. Paul's expense. The Board claims that Jurcevic failed to disclose a two and a half million dollar business loan from PNC Bank that he guaranteed; an impending decrease in his business income; and the fact that he planned to use the loan funds to prop up Stack Container Service, a business he owned and operated. The Board also accused Jurcevic of failing to keep sufficient funds in his share account and colluding with his wife and others at St. Paul to obtain fraudulent loans, some of which the Jurcevics used to kite prior outstanding loan balances. Consistent with the Board's fears, PNC obtained a $2 million judgment against Jurcevic and Stack Container for the unpaid business loan. *PNC Bank, Nat'l Ass'n v. Stack Container Logistics LLC*, No. 14-cv-1336, No. 6 (N.D. Ohio June 26, 2014).

To recover its losses, the Board, standing in the shoes of St. Paul as its liquidating agent, sued Stan and Bara Jurcevic and Stack Container, alleging fraud (Count 1), conspiracy (Count 2), conversion (Count 3), loan default (Counts 4–12), and unjust enrichment (Count 13). The Board obtained a temporary injunction, freezing the Jurcevics' and Stack Container's assets, except for living expenses, and placing the assets under the control of the district court. The district court twice renewed the injunction, and eventually extended it indefinitely.

On the merits, the district court dismissed the fraud, conspiracy, and conversion claims as time barred. And it dismissed the unjust enrichment claims against Bara Jurcevic and Stack Container as a matter of law. Because the remaining claims did not mention Bara or Stack, the partial dismissal eliminated them from the case.

Jurcevic appealed the orders freezing his assets and filed for Chapter 7 bankruptcy. The Board cross-appealed the partial dismissal and intervened in the Chapter 7 proceedings to challenge the discharge of its fraud claims. The bankruptcy court granted the discharge, but stayed the Board's adversary proceeding contesting the discharge of its claims pending resolution of the Board's appeal here.

Before reaching the merits of the Board's cross-appeal, we rejected it for lack of jurisdiction. The cross-appeal, we held, impermissibly sought review of a non-final judgment. On remand, the district court with the agreement of the parties entered partial final judgment on the dismissed claims under Civil Rule 54(b), which allows the immediate appeal of piecemeal claims. The appeal and cross-appeal now appear before us.

II.

*Preliminary injunction.* Stan Jurcevic asks us to thaw his frozen assets on the ground that the district court abused its discretion in seizing them. For what it is worth, he does not claim that the asset forfeiture violates due process or interferes with his ability to secure competent council. *See Luis v. United States*, 136 S. Ct. 1083, 1096–97 (2016) (Thomas, J., concurring in the judgment). We have jurisdiction over an appeal from a preliminary injunction. 28 U.S.C. § 1292(a).

The Financial Institutions Reform, Recovery, and Enforcement Act authorizes a court to issue, "at the request of the Board," "an order in accordance with Rule 65 of the Federal Rules of Civil Procedure, including an order placing the assets of any person designated by the Board under the control of the court and appointing a trustee to hold such assets." 12 U.S.C. § 1787(b)(2)(G). Rule 65 normally requires the court to balance four familiar preliminary injunction factors: (1) the likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) substantial harm to others from the proposed injunction; and (4) the broader

public interest. *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). But the Act says that Rule 65 applies in this context "without regard to the requirement . . . that the applicant show that the injury, loss, or damage is irreparable and immediate." 12 U.S.C. § 1787(b)(2)(H). Here, then, we gauge a revised four factors: likelihood of success, any harm to the Board (irreparable or otherwise), harm to the enjoined party, and the public interest.

None of these factors is a prerequisite to injunctive relief. *Flight Options, LLC v. Int'l Bd. of Teamsters, Local 1108*, 863 F.3d 529, 529 (6th Cir. 2017); *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *Reno*, 35 F.3d at 1099. The charm of balancing tests for some, and the curse for others, is that they ineffably permit the balancing to occur in all manner of ways. It's a balance of four factors, not a mandate that all four factors exist. While the absence of one factor—say harm to a moving party—may weigh heavily in the balance, it does not dictate the balance.

We may overturn an injunction of this kind only where the district court abused its discretion, an inquiry that has an equivocal component of its own. If a court relied on clearly erroneous facts, an inquiry weighted in favor of the district court, that amounts to an abuse of discretion. But if the court applied the wrong legal standard, an inquiry weighted in favor of no one, that too amounts to an abuse of discretion. *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 233–34 (6th Cir. 2011). Neither sort of error occurred here.

The Board established a likelihood of success on the merits of several claims. It showed that Jurcevic owed, but had not paid, his outstanding debts to St. Paul (Counts 4–12, loan default). It showed that Jurcevic omitted key facts from several loan applications (Counts 1, fraud, and 3, conversion). And it showed that he and his company kept this fraudulently obtained money (Count 13, unjust enrichment). Jurcevic offered no evidence to contradict these facts.

Two of the three remaining factors also favored the Board. Jurcevic had other creditors, a history of underhanded financial conduct, and a rapidly evaporating pool of assets—a looming lot of fiscal risks confirmed by his eventual bankruptcy. The Board thus established that the

absence of a freeze risked harm, perhaps even of the irreparable variety. It had every reason to ensure that Jurcevic had some assets to satisfy its claims at the end of the litigation.

The public interest also favored the Board. A failure to recover these debts would force all credit union members to foot the bill, increasing their premiums and borrowing costs.

The court did not err in finding that these factors cumulatively outweighed the (doubtless) serious burden on Jurcevic, particularly given the injunction's exception for his day-to-day expenses.

Not even Jurcevic claims that the Board is unlikely to succeed on its loan default and unjust enrichment claims. He argues instead that § 1787 injunctions require fraud, something not found in these collection-based claims. But the text of § 1787 nowhere mentions fraud. It grants courts the authority to issue "an order in accordance with Rule 65" as to "any person designated by the Board." 12 U.S.C. § 1787(b)(2)(G).

*FDIC v. Floyd*, 827 F. Supp. 409 (N.D. Tex. 1993), cannot fill this gap. It's an out-of-circuit district court case and offers no textual ground for this position to boot. One circuit has already rejected the decision. *FDIC v. Garner*, 125 F.3d 1272, 1278 (9th Cir. 1997). Now there are two.

Jurcevic complains that the district court denied him an evidentiary hearing. Not so. The court held a hearing in response to his request. While the hearing took place after the court issued the initial injunction, that first injunction expired long ago. Jurcevic had an opportunity to present contradictory testimonial evidence before the *existing* injunction but opted not to do so. There was no error in that.

But isn't the injunction now moot given the bankruptcy discharge, Jurcevic asks? Because the bankruptcy court discharged his non-fraud related debts and because the district court dismissed the Board's fraud, conversion, and conspiracy claims as time-barred, he reasons, there must be no merit to the Board's remaining positions. But that assumes too much in two ways. It assumes that the Board's appeal has no legs, an issue to be decided not by Jurcevic but by this court in the pages ahead. And it assumes that the bankruptcy court cannot consider

fraudulent conduct, as required by the Bankruptcy Code as opposed to state law, in determining whether to discharge his debts to St. Paul. *See Brown v. Felsen*, 442 U.S. 127, 138 (1979). The Board's claims for repayment may or may not fall under the fraud exception to the bankruptcy discharge rules and that possibility may or may not turn on whether the claims are time barred.

## III.

The Board's cross appeal seeks to reinstate the dismissed claims against the Jurcevics and Stack Container. Before addressing the point, we must establish our jurisdiction to do so.

*Jurisdiction.* A district court ruling that disposes of some claims or parties typically is not "final," as required by 28 U.S.C. § 1291. *See Flanagan v. United States*, 465 U.S. 259, 263 (1984). Civil Rule 54(b) creates an exception. It allows a district court to reroute the normal appellate course when, as happens from time to time, the benefits of immediate appeal outweigh its costs. *See Adler v. Elk Glenn, LLC*, 758 F.3d 737, 739 (6th Cir. 2014) (Sutton, J., concurring).

Under the rule, a district court may "direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). That prompts two questions: Did the district court enter judgment as to "one or more, but fewer than all" claims? And did the district court appropriately determine that there was "no just reason for delay," accounting for the relationship between the claims, the possibility that the appeal might become moot, the possibility of repeat adjudications, the existence of potential counterclaims, and the existence of other factors such as expense, delay, economic solvency, trial length, and frivolity of the claims? *Lowery v. Fed. Express Corp.*, 426 F.3d 817, 821–22 (6th Cir. 2005). We look at the first question with fresh eyes, the second with deferential ones. *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 500 (6th Cir. 2012).

The answers to both questions favor an immediate appeal. The district court dismissed the Board's fraud, conversion, and conspiracy claims against all defendants and the unjust enrichment claims against Bara Jurcevic and Stack Container. But it left in place the loan default and unjust enrichment claims against Stan Jurcevic. Those are distinct claims based on distinct

events:  unlawful inducement of the loan funds and unlawful retention of those funds.  Nor can we say that the district court abused its discretion in finding no reason for delay after balancing the remaining factors.  The legal arguments underpinning the Board's appellate claims had little to do with the remaining ones.  The Board and Jurcevic had fully briefed the issues on appeal before the court made its Rule 54 determination.  And if the Board prevailed on appeal, a revival of the once-dismissed claims would streamline the trial proceedings.

*Statute of limitations*.  Section 1787(b)(14) supplies the limitations period for "any action brought by the Board as conservator or liquidating agent."  12 U.S.C. § 1787(b)(14)(A).  For tort claims, it grants "the longer of" two potential periods:  (1) three years or (2) "the period applicable under State law."  *Id*.  Because Ohio provides a four-year statute of limitations for fraud and conversion claims, it amounts to "the longer of" the two periods.  Ohio Rev. Code § 2305.09.

The statute also addresses when the limitations clock starts.  It again provides two options, and it again uses "the later of" the two dates.  "[T]he statute of limitation begins to run," says the statute, on "the later of (i) the date of the appointment of the Board as conservator or liquidating agent; or (ii) the date on which the cause of action accrues."  12 U.S.C. § 1787(b)(14)(B).  Under Ohio law, this kind of action accrues on the date the victim uncovers or reasonably should have uncovered the wrongdoing, often called the "discovery rule."  *Inv'rs REIT One v. Jacobs*, 546 N.E.2d 206, 209 (Ohio 1989).

The statute thus offers two potential starts dates.  The first focuses on the date of appointment of the Board.  The second looks to the date the cause of action accrued, which in this instance turns on Ohio's "discovery rule."  *Id.*  The district court ruled that the Board failed to satisfy the time limits under the date-of-appointment option and saw no need to reach the date-of-accrual option because the Board did not address the question of accrual in its complaint.

We see no imperative at this stage in the case to resolve the intricate statutory interpretation question presented by the date-of-appointment option.  *Compare Nat'l Credit Union Admin. Bd. v. Credit Suisse Secs., LLC*, 939 F. Supp. 2d 1113, 1125 (D. Kan. 2013), *with In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL

Nos. 14-4297/ 15-3324/ 17-3162

*Nat'l Credit Union Admin. Bd. v. Jurcevic, et al.*

Page 9

4634541, at *112–13 (S.D.N.Y. Aug. 4, 2015). But we think the district court does indeed have authority to determine the date on which the fraud, conversion, and any other tort claims accrued, and whether they were filed within the four-year limitations period.

The Board filed its complaint on April 29, 2014. To show that these tort claims are time barred, Jurevic thus had to establish that the Board, exercising reasonable care, discovered or should have discovered his fraudulent conduct before April 29, 2010.

But the district court inverted this burden. It held that, because the Board did not allege that these claims accrued before April 29, 2010, it could not be so. That's not how affirmative defenses, such as a statute of limitations, work. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). It was Jurcevic's burden to show that the Board should have discovered his fraudulent conduct before the relevant time period, not the Board's burden to plead around the possibility.

Because the district court did not address whether Jurcevic satisfied his burden or proved that the Board's "complaint affirmatively show[s] that the claim[s] [were] time-barred," the district court needs to consider the issue in the first instance. *Id.* To the extent the resolution of the issue turns on contested questions of fact, some discovery may be required.

*Unjust enrichment.* To succeed on its claim for unjust enrichment, the Board had to prove that (1) it conferred a benefit upon Bara Jurcevic and Stack Container; (2) Bara Jurcevic and Stack Container each knew of that benefit; (3) they retained the benefit "under circumstances where it would be unjust to do so without payment"; and (4) the retention of this benefit caused harm to the Board. *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003) (internal quotation omitted). At bottom, unjust enrichment is an equitable remedy. It seeks to correct what is unjust, not what is unfortunate.

The Board alleged each element. The complaint charges that Bara Jurcevic and Stack Container had access to, and in fact used, the St. Paul loan money (a benefit). It alleges that Bara and Stack knew these funds came from St. Paul and "had knowledge of Stan's material misrepresentations and/or omissions concerning the St. Paul loan applications" (knowledge of the benefit). R. 38 at 10, 25. It alleges that both defendants conspired with Stan and others at St.

Paul to help obtain and retain the loans for their personal use (unjust retention). And it alleges a causal link between the benefit to Bara and Stack (the additional money) and the Board's detrimental position (an inability to recover its funds). The facts may not bear out these allegations. But that is neither here nor there. Plausible allegations suffice at the pleading stage.

For these reasons, we affirm the preliminary injunction, vacate as to Counts 1–3, reverse as to Count 13 for Stack Container Service and Bara Jurcevic, and remand for consideration of Jurcevic's remaining arguments in the first instance.